REQUESTED BY: Senator Don Wesley 808 State Capitol Lincoln, NE 68509
Dear Senator Wesley:
In an effort to determine whether or not there is any need to clarify the provisions of Article XII, Section 8, of the Constitution, you have asked if that part of Section 8 which prohibits the corporate ownership of farm or ranch land includes corporations which may be engaged in:
(a) the production of turkeys;
(b) the production of broilers;
 (c) the production of chickens producing eggs for market purposes;
 (d) the production of poultry for processing of poultry and poultry products;
 (e) the production of poultry breeding stock and poultry for breeding purposes.
Section 8 of Article XII of our Constitution provides in part: `no corporation or syndicate shall acquire, or otherwise obtain an interest, whether legal, beneficial, or otherwise, in any title to real estate used for farming or ranching in this state, or engage in farming or ranching.'
After defining corporations, Section 8 goes to set forth a number of instances which the above restrictions shall not apply to. One of those instances is as follows: `(F) Agricultural land operated by a corporation for the purpose of raising poultry.'
With regard to the production of turkeys, broilers, poultry for processing of poultry, poultry breeding stock and poultry for breeding purposes, we find that in Bartelsv. State, 91 Neb. 575, 136 N.W. 717 (1912), our Supreme Court stated that poultry, according to the definition inWebster's New International Dictionary is: `(2) domestic fowls reared for the table, or for their eggs or feathers, such as cocks and hens, capons, turkeys, ducks and geese.' Other jurisdictions have accepted the same definition.
It would appear from this definition that the word poultry encompasses only a live domesticated fowl and does not include parts or products of the fowl, such as eggs, feathers, or the parts of a dressed bird. For example, inPurdue, Inc. v. State Department of Assessments and Taxation,264 Md. 228, 286 A.2d 165, the Maryland court held that hatchery eggs are not poultry and do not become poultry until hatched, at which time the newborn chick becomes poultry. In Qwong Yuen Shing v. U.S., 177 F. 605, the court held that duck made in tin, some salted and dried, and some packed in oil, is not poultry; and in Smith Company v.U.S., 168 F. 462, the same court held that `cooked meat of poultry and game, in tins, and goose livers prepared as pate de foie grass, are not dutiable, either directly or by similitude as poultry.'
With regard to your question concerning the production of eggs for market purposes, it would appear from the above cases that where the issue has arisen the courts are unanimous in holding that eggs are not poultry. This being so, it could probably be argued that the production of eggs is a farming activity and not exempt from the restrictive provisions of Article XII, Section 8, of the Constitution. However, there is one other matter that we find should be considered.
From our discussions with authorities on the raising of poultry and the production of eggs, it is our understanding that there are three essential periods of time to be considered during the life span of any domestic fowl which would produce eggs for commercial purposes. The first period is the pullet stage from the time the egg is hatched until the hen becomes a producer of eggs, (roosters, except those kept for breeding purposes, are usually destroyed soon after they are hatched); the second period is the period during which the hen would be producing eggs for whatever purposes; and the third period is the one during which the fowl would be sold to commercial concerns in preparation for human or other consumption. It is quite clear that during all three periods poultry is being raised even though during one of those periods the poultry is being raised primarily for the production of eggs.
With this in mind, it would appear that in order to determine whether a production facility is or is not subject to the restrictions of Article XII, Section 8, of the Constitution, it would first be necessary to determine whether the primary purpose of the facility is the production of eggs for market purposes, or for the production of poultry. If the primary purpose is the production of poultry, then the restrictions of the Constitution would not apply. If the primary purpose is the production of eggs, then the restrictions would apply.
Very truly yours,
A. EUGENE CRUMP Deputy Attorney General
Bernard L. Packett Assistant Attorney General